IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY LEE, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA. | : | NO. 13-510 |

<u>**MEMORANDUM**</u>

**Restrepo, J.**                                                                                                    **February 26, 2014**

   Jeffrey Lee sues the City of Philadelphia ("City") for employment discrimination under federal and state law, stemming from an alleged discriminatory termination. I have jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367. Now pending is the City's motion to dismiss the Amended Complaint pursuant to federal rule 12(b)(6). For the reasons below, the motion will be granted in part.

**I. FACTS AND PROCEDURAL HISTORY**

   The facts, as pleaded in the Amended Complaint, are as follows: Lee is an African-American male, who was employed with the City from 1985 until 2011. Am. Compl. ¶ 5. Lee was a correctional officer from 1985 until 1990 and a revenue investigator from 1990 until 1998. *Id*. ¶ 6. On June 29, 1998, he was appointed as a "Claims Adjuster I" with the Office of the Director of Finance, Risk Management Division. *Id.* On September 1, 2001, he became a "Claims Adjuster II." *Id.*

   Sometime in 2001, Lee filed a discrimination charge against the City, which was settled. *Id.* ¶ 7. In 2004, the position of claims manager opened. *Id.* ¶ 8. Lee applied, but Rubbi Urroz, a Hispanic female, was selected instead of him. *Id.* In 2005, the position again became vacant, and Lee again applied. *Id.* ¶ 9. During Lee's interview, Barry Scott, the Director of Risk Management, "questioned Lee about his charge of discrimination that he had filed in or around

2001, and asked Lee if he would do things differently if given the opportunity." *Id.* Ronald McEnnis, an African-American male, was selected for the position instead of Lee. *Id.* Despite his non-selection, Lee began performing as acting manager when McEnnis was away from the office. *Id.* ¶ 10.

In 2008, the manager position again opened and Lee again applied. *Id.* ¶ 11. Deborah Garvey, a Caucasian female, was selected for the position rather than Lee. *Id.* ¶ 12. Lee continued to perform as acting manager when needed. *Id.* When the position opened again in June of 2011, Lee again applied. *Id.* ¶ 13. Cecelia Kenny, a Caucasian female, was selected for the position rather than Lee. *Id.*

On September 20, 2011, Lee dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission, alleging sex and race discrimination and retaliation under federal and state law. *Id.* ¶ 14. On September 27, 2011, in Lee's annual review, "Kenny was unwarrantedly critical of Lee and she attempted to issue [him] a negative review." *Id.* ¶ 15. Finally, it is implied but not specifically alleged that Lee resigned at some point thereafter.

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Id.* at 555. Although the Federal Rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *See id.; see also Phillips*, 515 F.3d at 231.

### III.  DISCUSSION

#### A.  Race and Sex Discrimination

Title VII makes it "unlawful for an employer to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). So too, does the Pennsylvania Human Relations Act.[1] 43 P.S. § 953. Accordingly, "[t]o state a claim for race [or sex] discrimination under Title VII [or the PHRA], the plaintiff must allege (i) that [he] is a member of a protected class, (ii) that [he] was subject to an adverse employment action, and (iii) that similarly situated members of other racial [or gender] classes were treated more favorably or that other circumstances exist that give rise to an inference of unlawful discrimination." *Alexander v. Keystone Mercy Health Plan*, No. 06-5599, 2007 WL 1651147, at *3 (E.D. Pa. June 4, 2007) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-12

---

[1] Due to their similarities, Title VII and PHRA claims are analyzed identically. *E.g., Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) ("The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.").

3

(3d Cir. 1999)).[2] Here, the motion will be granted because Lee's Amended Complaint does not include sufficient facts to show that "similarly situated members of other racial [or gender] classes were treated more favorably or that other circumstances exist that give rise to an inference of unlawful discrimination." *Id.*[3]

Lee alleges that he was discriminated against when the City selected Cecilia Kenny, a Caucasian female, for the manager position in 2011. It is conceivable that if Kenny were the only applicant who had been selected for the position over Lee, this claim could survive a motion to dismiss, as the Amended Complaint would demonstrate that a similarly situated member of a different race and gender was treated more favorably than Lee. *See Alexander*, 2007 WL 165114 at *4 (denying motion to dismiss where causation was met by showing that similarly situated white employees were not subject to same treatment as an African-American plaintiff). The Amended Complaint also states, however, that the City has selected the following additional persons for promotions rather than Lee: a Hispanic female, an African-American male, and a second Caucasian female. Nothing in the Amended Complaint suggests that race or sex played any more of a role in the 2011 hiring decision than the decisions that preceded it. Thus, because the only inference that can be drawn from the facts of the Amended Complaint is that the City hired managers of multiple races, ethnicities, and genders, including another African-American

---

[2] At the motion to dismiss stage, the familiar burden-shifting framework does not control, because such a framework is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Accordingly, "complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a)." *Id.* at 513. *See also Santiago v. Brooks Range Contract Servs., Inc.*, No. 11-7269, 2012 WL 1019060, at *2 n.4 (E.D. Pa. Mar. 26, 2012) (noting that the burden-shifting framework for discrimination cases "is a standard for producing and evaluating evidence, not a pleading requirement").

[3] In its motion to dismiss, the City also argued that Lee's PHRA claims were time-barred. Counsel for the City withdrew this claim at oral argument.

male, and because the Amended Complaint contains no other hint of a factual basis for allegations of race and sex discrimination, these claims will be dismissed.

### B. Retaliation

Lee also sues the City for retaliation, alleging that the City's failure to promote him in 2011 was because of his 2001 discrimination suit. To state a claim for retaliation, Lee must plead facts sufficient to show that "(1) that [he] was engaged in a protected employee activity; (2) that [he] was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005) (internal citations omitted). The parties agree that Lee's 2001 suit was a protected activity and that the failure to promote him in 2011 was an adverse employment action. Accordingly, the motion turns on whether the Amended Complaint sufficiently alleges a causal connection between Lee's protected activity and the adverse action. To plausibly make such a connection, Lee "may rely on a broad array of evidence." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quotations and citation omitted).

One allegation commonly offered to demonstrate causation in retaliation cases is a close temporal proximity between the protected activity and the adverse action. *E.g.*, *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding that temporal proximity raised an inference of retaliation when adverse action occurred only two days after the protected activity). No such proximity exists here, but its absence alone "is not legally conclusive proof against retaliation." *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993). Instead, where "the time between the protected activity and adverse action is not so close as to be unusually suggestive . . . courts may look to the intervening period for demonstrative proof, such as actual antagonistic

conduct or animus against the employee." *Marra*, 497 F.3d at 302. Moreover, temporal proximity and antagonistic conduct "are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (citation omitted). "Indeed, the Court of Appeals for the Third Circuit has set forth 'no limits' on the kinds of evidence that a court may consider when searching the record for the required causal link." *Nesmith v. Independence Blue Cross*, No. 02-2894, 2004 WL 253524, at *3 (E.D. Pa. Feb. 10, 2004) (quoting *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000); *see also Wade v. Donahoe*, No. 11-3795, 2012 WL 3844380, *7 (E.D. Pa. Sept. 4, 2012) (after passage of seven years since protected activity, still analyzing complaint for allegations of intervening antagonism). In sum, "[t]he element of causation is highly context specific, and requires looking at the record as a whole to determine whether the plaintiff has raised an 'inference that [his] protected activity was likely the reason for the adverse action.'" *Nesmith*, 2004 WL 253524 at *3 (quoting *Kachmar,* 109 F.3d at 177–78).

The Amended Complaint asserts that the City's repeated failure to promote Lee in 2004, 2005 and 2008 demonstrates continued antagonism in the intervening period. While these discrete acts of alleged retaliation are time-barred and thus not independently actionable, they still represent plausible instances of antagonistic behavior. In addition, Lee alleges that while actually interviewing for the manager position once before, he was asked by a City decision-maker whether he regretted filing the 2001 lawsuit.[4] *C.f. Woodson v. Scott Paper Co.*, 109 F.3d 913, 924 (3d Cir. 1997) (affirming verdict of causation where the employer had "set[] [plaintiff] up to fail" by putting him in charge of the worst-performing division and where a manager

---

[4] The City argues that the alleged discussion of Lee's earlier protected activity is only a "stray comment." In fact, such a comment may be direct evidence of discrimination.

6

suggested that the plaintiff drop his administrative complaints). Finally, Lee plausibly contends that he was clearly qualified for the manager position for many years, given that he routinely served as acting manager, but was passed over with little explanation.

"In assessing causation, [I am] mindful of the procedural posture of the case." *Marra*, 497 F.3d at 302 (citation omitted). Here, at this early stage, Lee plausibly alleges that his 2001 activity was a 'scarlet letter' in his employment file, serving to repeatedly retard his chances at a promotion, despite his qualifications for the manager position. Accordingly, Lee has done enough to "nudge" his retaliation claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### C. Constructive Discharge

The City also moves to dismiss Lee's claim for constructive discharge. "To establish a constructive discharge, [Lee] must show that the [City] knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citation and quotations omitted). The test for intolerability is an objective one, and difficult to meet:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign. Rather, [i]ntolerability . . . is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign, -that is, whether he would have had no choice but to resign.

*Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (emphasis in original) (quotations and citation omitted). And, in assessing whether an employee faced intolerable work conditions, a court must consider a number on non-exhaustive factors, "including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay

7

or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Mandell*, 706 F.3d at 169-70 (citing *Colwell v. Rite Aid Corp.,* 602 F.3d 495, 503 (3d Cir. 2010).

The Amended Complaint is void of any facts related to Lee's apparent resignation and does not even plead that Lee resigned. To the extent that Lee's resignation is implied, the Amended Complaint still fails to identify any factors that forced his resignation other than his failure to be promoted. As other district courts have noted, within the context of the high standard elaborated above, "[a] denial of a promotion, even if discriminatory, does not alone suffice to establish constructive discharge." *Ezold v. Block, Schorr and Solis-Cohen,* 751 F. Supp. 1175, 1192 (E.D. Pa. 1990), *rev'd on other grounds,* 983 F.2d 509 (3d Cir.1993.), *cert. denied,* 510 U.S. 826 (1993). "Rather, a denial of a promotion must be accompanied by other factors which, when viewed together, would cause a reasonable person to believe that the employment condition was so intolerable that he or she would have to resign." *Hopson v. Dollar Bank*, 994 F. Supp. 332, 340 (W.D. Pa. 1997). This makes sense given the Circuit's exacting standard for constructive discharge. If every failure to promote (or other allegation of discrimination) served as a per-se constructive discharge, the objective test would be subsumed by almost any discrimination claim. Accordingly, the Amended Complaint's failure to plead any additional facts about Lee's working conditions and apparent resignation precludes this claim from proceeding, and the count will be dismissed.

## IV. CONCLUSION

Lee's race discrimination, sex discrimination and constructive discharge claims fail to state a claim and must be dismissed. To the extent that Lee can plead facts that give additional

support to his causes of action, he may file a second amended complaint. Lee's claim for retaliation states a plausible claim and may proceed.

An implementing Order follows.